Good morning, everyone. Good morning. The first case this morning is number 09-1539, Abraxis Bioscience v. Navinta LLC. Ms. Addy. Good morning, Your Honors. May it please the Court. I'd like to address three issues today, standing, injunction against the FDA, and the specific intent form of inducement. First, Abraxis did not own the patents in suit when it filed this litigation. It relies on the retroactivity of assignments executed between third parties, not Abraxis, on the day that it sued Navinta. But third-party assignments cannot vest title in Abraxis. The proper assignments were executed some five months after this litigation was filed. Standing cannot be confirmed retroactively, and this case should be dismissed. Second, this case derives its remedy from a hatchback. So, Ms. Addy, if the case is dismissed, what happens? Another suit is filed, is that right? Yes, that's correct. OK. All right, let's continue. Is that based upon the two patents which have not expired, or the one that will be expiring in September? It depends on when the case gets refiled. Will they have a cause of action at that point on the original patent under the ANDA filing? If the original patent is expired, then they do not. But what about the two patents which were not listed on the Orange Book? The ANDA filing was amended to include those two. Yes. Now, the Orange Book filing was made 10 years after the actual issuance of the patents, right? Correct. What deficiency does that have on the filing at the Orange Book level? Does that mean during the first 10 years you couldn't file an ANDA against those two patents? That's correct, Your Honor. You could not file an ANDA against the unlisted patents. But what happens if, in fact, a generic company, assuming that they wanted to produce that drug generically, they're not notified of the coverage of those two patents? Does that make the filing, then, you would have to essentially produce the drug, get approval from the FDA, and then go to market with it before you could even be considered infringing? An infringement would result under the traditional statute of limitations. 271. Yes, Your Honor. Now, what happens in that kind of a situation? If I own a patent, I'm a pharmaceutical company, and I own patent A, and it covers a molecule, and I have five other patents that are issued subsequently to cover the method of using that molecule, and I do not file them in the Orange Book. How does that really provide for the notice provision under the Hatch-Waxman Act? Is that gaining the system at that point, just waiting? Could I file one patent at a time in the Orange Book? And then, as the provisions allow later on, file additional patents in the Orange Book? Well, it is, Your Honor, because it doesn't promote the open use of the Orange Book as the drafters of the statute provided, because it allows the graded pharmaceutical to gain the system and put one, put its strongest patent in the Orange Book, and then leave its other possibly not so strong patents, or later expiring patents, unlisted, and possibly list them one at a time later on, as certain generics file paragraph four certifications on the patents that are listed, and drag this process out as long as it possibly can. Is there any statutory requirement for filing in the Orange Book? Yes, there is. As soon as a graded pharmaceutical knows or believes that its patent covers its product, then it is required within 30 days of such knowledge to list that product in the Orange Book. What's your comment on the statutory requirement that if someone, such as a generic producer, believes that a patent has not been listed and should have been, to notify the FDA? I'm not sure that there is a requirement such as that. You say that there's no requirement at all if the generic producer believes that a patent exists, an adverse patent, and it wishes to use the invention in that patent in an AMDA? I'm not aware of that requirement, Your Honor, of a requirement such as that. This assumes that an AMDA is filed. A generic doesn't have to proceed through the AMDA procedure. I believe if I understand your question, Your Honor, that's correct. It's the brand's responsibility if it is of a patent that covers its product to list it in the Orange Book. So if the generic chooses not to use the AMDA procedure, then the generic, I gather, is not permitted to use the data of the registered drug, but needs to start afresh and provide its own information. I understand your question, Your Honor. Yes, that's correct. If the generic chooses not to go through the shortened AMDA procedure, then the generic must file an NDA and go through the much longer new drug application procedure, which is quite cumbersome. Is that what's happening here? No, Your Honor. In this case, Neventa did use the AMDA procedure and certified the listed 086 patent under the paragraph 4 certification procedure, notified Abraxas that it did file a paragraph 4 and proceeded as it is supposed to do under the AMDA procedures. Now, I understand your argument to be that there's no jurisdiction under 271E2 absent a listing of the patent in question in the Orange Book. That's correct, Your Honor. For the late listed method patents that Abraxas listed after the litigation was filed, Neventa has not filed a paragraph 4 certification on those patents, and there is no E2 jurisdiction over those patents. Now, what is it in 271E2 that leads you to that conclusion? Under 271E2, the last sentence says that infringement lies only if the AMDA applicant's purpose is to obtain approval under the Hatch-Waxman Act to engage in the commercial, and I paraphrase, use of the claim, claimed in the patent before its expiration. And that language is mirrored in the notice requirement that is the only notice requirement, which is for paragraph 4 certification. So is your position that your client has the absolute right to use the data in these later expiring patents in an abbreviated application because they weren't timely listed in the Orange Book? I'm not sure you mean the data in the patents? The data that is the invention that is patented in these two later expiring patents. My client is not using the data in the patents. We have carved out of the label the information. I'm sorry, the data for federal approval, for FDA approval of the inventions that are covered in these two later filed patents. And we're not using the inventions for FDA approval as well. We are only seeking to use the data that is covered by the first 086 covered patent, and the later patents, we have carved out that information, and we're not seeking approval for that information from the FDA, and the FDA has approved our label seeking only coverage for the first 086 patent. Okay, let me ask you as a separate aspect of jurisdiction, what is your response to the position that whatever the Hatch-Waxman implications, there would nonetheless be declaratory jurisdiction? We agree that at this point there is declaratory judgment jurisdiction, but that does not save Abraxas here because the remedy that Abraxas sought and that the district court granted is a remedy solely available under 271E2, and that remedy was under 271E4, rather, which draws its basis from 271E2. And that remedy is to enjoin the FDA. Abraxas does not deny that the district court did not find an act of direct infringement other than under 271E2. Which would be under an end of filing. Right. So there would be no technical infringement unless it was an end of filing. That's right. But there might be actual infringement, not technical infringement under Hatch-Waxman, but actual infringement. It hasn't occurred yet, but I understand what you are implying, Your Honor. And so I want to explore that a little more. And while we do understand that there is DJ jurisdiction, I want to address that. And an injunction preventing the FDA isn't proper under 271E, the Declaratory Judgment Act. And I think we addressed that. But in addition, it wouldn't be proper to move that injunction over into an injunction enjoining NAVENTA either, because the district court could not have enjoined NAVENTA without first considering factors such as the eBay factors, such as no irreparable harm, no public interest or the public interest in lower priced drugs, the balancing of the hardships. Well, the district court found jurisdiction under the Hatch-Waxman Act so that these other issues weren't explored. That's right. But I would think that they are available for exploration if we were to agree with you about Hatch-Waxman. Well, the district court, if there's jurisdiction under Declaratory Judgment, and there was a trial here, the district court had the opportunity to explore these other remedies. And they weren't presented. And so it's our position that this case should be reversed. But on what basis would the reversal take place? Is it because there was no jurisdiction under ANDA, or because that judgment was improperly received by the district court? There's no jurisdiction under ANDA so that judgment was improperly received by the district court. Yes. So we'd have to agree that any defect was not remedied either in the various transfer documents or in the eventual recordation in the Orange Book of the two patents, or both. I don't think we'd ever get to the ANDA issue if the court determines that there was no jurisdiction because they did not own the patent at the time of filing. I think that's correct, Your Honor. But the court found that there was jurisdiction. The district court did find that, Your Honor. I think it was. I agree with you, though. If you reach there's no standing, you probably do not get to reach the 271E2 issue. Let's move on to we're running short of time. OK. I stand into my rebuttal. Do you want to discuss inducement? Well, is there any other point that you feel critical to raise with us in your argument? Yes. If you do reach the merits of the case under the specific intent prong of inducement, the district court failed to make any finding of specific intent, and that is reversible error. For example, the district court held that Naventa knows or should know that its acts would result in infringement. That's at paragraph 250 at A75. But that's not enough. Specific intent has a causation requirement from DSU. And Abraxas was required to prove that Naventa knew or should have known that our label would cause direct infringement. And the district court never made that finding. And we challenge Abraxas to show the court where in the district court decision he found that Naventa had the specific intent to cause the direct infringement. It's missing from the district court's decision. Thank you. I'll reserve the rest of my time. Thank you, Ms. Addy. Mr. DeVoto. Good morning. May it please the court. Your Honors, this case comes to the panel after a seven-day trial with numerous witnesses and experts. As the court knows, there was a 75-page decision, 25 pages of findings relating to infringement, and many key issues in the case that experts on either side didn't dispute. The court carefully analyzed the market, the other issues, the patents, and concluded that Naventa infringed. How about standing? How do you have standing to bring an action in a patent which you did not own at the time of the filing of the complaint? The court made detailed findings and analysis on that issue, Your Honor. There was a half-day hearing based on written evidence, declarations by both parties that were involved in the transaction. The AstraZeneca witnesses, as well as the other witnesses, were present at the hearing without the transaction. And the evidence showed that there was an agreement to enter into a transaction to transfer multiple patents, multiple pharmaceutical products, comprehensively. Which agreement are you referring to? I'm referring to the asset purchase agreement. And that agreement contemplated that the Astra party, the Astra UK party, would act on behalf and would cause affiliates of its company to make any transfers that were necessary, and that it would do so as of the effective date of June 28, 2006. But that document uses future language. It's an arachnid-type assignment, correct? Shall or shall cause? It uses the language that it will shall cause. So it's not an effective, immediate, or present transfer? It represents a transfer that is effective, certainly of an equitable transfer. And the transfers that occurred, which were made as of June 28, 2006, accomplish the transfers of the patents issued. But what was legal title at that point? Legal title to the asset, which was to be transferred under the agreement. Legal title was originally, before the transactions began, in the Astra entities and the Astra affiliates, and Astra UK, on behalf of itself and its affiliates, agreed to transfer the title in the original transaction, and then simply agreed. And part of it was contemplated was to execute and carry out any further documentation that was necessary. But even if we consider the APA agreement, the April 26, 2006 agreement, to be an equitable transfer, and then June 28, 2006, there is an actual present assignment. Both of those transactions involve the transfer of rights from AstraZeneca UK to Abraxas. But AstraZeneca UK did not have title either on April 26, 2006 or June 28, 2006. So they're assigning something that they don't, at that time, own. Well, they're assigning, at that point, they're entering into an agreement and assigning on behalf of themselves and their affiliates rights that they and their affiliates did have. And the only thing that had to happen was the documentation had to be completed to complete the transfers as of June 28, 2006, which is what happened. There was, in other words, a binding agreement at that point on behalf of AstraZeneca UK and its affiliates, on the one hand, and Abraxas, on the other hand, to effectuate that transfer. And that's when the transfer was made. But if AstraZeneca UK did not own the patents at that point, what could it transfer? Well, but it owned, and its affiliates owned the assets. And it was binding itself. But AstraZeneca UK did not own the patents at that point. It might have been owned by an affiliate. But there was no ownership. There was no legal title. But it was binding. In other words, it was binding its affiliates at that point. To transfer it sometime in the future. There was no. To transfer it as of that date and to effectuate documentation in the future that would be necessary to document the transaction. But AstraZeneca UK, acting on behalf of itself and its affiliates, was transferring the right and title in this agreement. Whatever it owned. Whatever it and its affiliates owned. But if it didn't own it, then it couldn't transfer it at that point. If it and its affiliates didn't own it, then they couldn't transfer it. But the record is absolutely clear that it and its affiliates did own the patents. And there's been no question and there's no evidence supporting that AstraZeneca UK would not be able to bind its affiliates. Where is the language regarding affiliates in the June 28 assignment? I'm looking at appendix page 1342. If I don't see it, I just want to make sure I'm not overlooking something. This is basically the agreement is saying, and if you're looking at 1342 and 1343, the agreement is saying, for example, if you look at paragraph five, the further assurances. The seller is covenanting and agreeing that any time and from time to time after the date of this intellectual property assignment agreement, it will do, execute, deliver, a cause to be done, executed, acknowledged, and delivered, and all further acts, conveyances, transfers, buyers, and any assurances as necessary to grant, sell, convey, assign, transfer the transferred intellectual property. The testimony of- Yeah, but that doesn't talk about affiliates. This is an agreement between AstraZeneca UK and Abraxas. Well, I think that the testimony on this point was that AstraZeneca UK, the representative of AstraZeneca UK who testified, said that the objective here and the intent and the understanding of the parties was that the transfer would encompass- But the testimony is not going to rewrite this agreement. The agreement is clear on its face, so parole evidence shouldn't even have been admitted on that point. The original APA agreement, April 26, 2006, that's at appendix A1280, or 1285, anyway. Again, seems to be between AstraZeneca UK and Abraxas. I'm sorry, you're on what page was that? 1285. Now that document apparently has some reference to affiliates. Yes. But I'm not exactly sure where or how that affects this issue. 1286 defines affiliates. The definition appears there. And I believe that the transfer provision, I think, contemplates a transfer on behalf of the seller. Well, at 1299, paragraph 2.1 talks about the seller shall or shall cause, seller being AstraZeneca UK, seller shall or shall cause one or more of its affiliates to transfer. But it's not a conveyance from the affiliates. The affiliates are not a party to this agreement. It's an undertaking that AstraZeneca UK will cause some further act at some future time, which in this case took place after the suit was filed. Well, certainly the transfers, of course, occurred before, certainly the assignments issue occurred before the suit was filed. But in terms of the question your honor asked, it's talking about transferring all rights of the sellers and or its affiliates. And it's relating to all transferred patent rights. The seller, AstraZeneca UK, is committing to transfer all the rights of itself and its affiliates. And at this point, its affiliates, there's no evidence to the contrary. Its affiliates and AstraZeneca UK own the patent rights in question. And so this document commits to transfer all rights. At some future time. Well, it commits to do it and to do it with an effective date of June 28, 2006. And so it's not, in other words, in terms of the way that the transaction is structured and in terms of the way New York law operates, it's appropriate and it's permissible to have transfers as of a particular effective date. And this commits, as of the date of this agreement, that the transfer will occur. So equitably, it's transferred as of this date. And legally, it's transferred as of this date because the transfers were made effective as of June 28, 2006. And also, I think there's also the evidence is clear that AstraZeneca UK had control over its affiliates and could bind them. And that was what the testimony indicated as well. I'd like to ask you a question about jurisdiction in 271E2. Ms. Hanny mentioned the language in paragraph 271E2 that says that this relates to subjects claimed in a patent or the use of which is claimed in a patent before the expiration of such patent. As the language in 271E2 that relates to orange book listings and the plotting of a certification under paragraph 4. So from that, she derives the conclusion that there's no jurisdiction if the patent is not listed in the orange book. What's your response to that? Well, I think that the, in your honor, is talking about the language that begins with the purpose of such submission. Yes. Yeah. The problem with interpreting the statute that way is it would effectively mean that any time there is going to be a dispute about infringement, it would immediately mean that there was a question about jurisdiction. In other words, interpreting this provision that way puts the cart before the horse. It essentially means that you could never determine jurisdiction without determining infringement, read this particular way. And in fact, it would swallow up the argument, I think, that Navin is making. They would like to argue that there's a paragraph 4 requirement in the provision. But even in a paragraph 4 certification, if a party said, we're not infringing the patent, I think that if read the way that Navin is urging, there wouldn't be jurisdiction under this provision either. So it creates problems. It creates an inconsistency that doesn't really make sense. So it's your position, then, that as long as one patent is listed in the Orange Book, that's fine, and there's a paragraph 4 certification filed for that patent, that that provides jurisdiction for any number of patents, correct? Is that your position? Our position is that if an and is filed, it provides jurisdiction. Even without any patent? Even if there's no patent listed, I mean, even if an and is filed, and I think that the plain language of the statute is clear on that point, it never mentions the idea of a paragraph 4 certification in the statute. So for example, 271E2A talks about and it's an act of infringement to submit an application under an and that doesn't mention the idea of a paragraph 4 certification. If you compare it to the language of paragraph of E5, later in the same statute, E5 says, where a person has filed an application described in paragraph 2 that includes a certification under subsection, and one of the certifications it's talking about is a paragraph 4, it wouldn't need to say that includes a certification under paragraph 4 in E5 if, as Navinda argues, E2 automatically requires that there be a paragraph 4 certification. The statute clearly contemplates that the filing of an and, the submission of an and, is the act of patent infringement that creates jurisdiction. That's indicated in the legislative history at our brief, pages 35 to 36. But this court has really made that ruling in the Teva case and in the Glaxo case. You know, basically in Teva, the court analyzed whether there was case or controversy jurisdiction and specifically analyzed 271E2 to make that determination and said, under 35 USC 271E2A, submitting an and regardless of how many paragraph 4 certifications it may contain is a single act of infringement. So in other words, in that case, the court specifically decided that it didn't say we have to analyze whether there were paragraph 4 certifications or not. In that case, the facts happened to be that there were paragraph 4 certifications, but it wasn't something that the court addressed and said, this is a critical issue. But that was a determination for a declaratory judgment. It was a declaratory judgment in terms of, that's right. But with the jurisdiction, I think as part of the analysis, your honor and the panel concluded that Novartis created the present and actual controversy by choosing to sue under 35 USC 271E2A on Teva's single act of infringement. Basically, the court found that filing an and-a was one act of infringement. You didn't have to have a bunch of paragraph 4 certifications. It was just one act. And filing the and-a created the jurisdiction. However, let me ask you a question regarding the and-a certification. If you only have one patent listed in the orange book and an action is filed, other patents are developed and subsequently listed on the orange book. Does a 30-month extension apply to each one of those patents, or is it just one 30-month extension? I'm not sure that there is a case that addresses that, but there would be obviously arguments  as opposed to multiple. And obviously, depending on the facts, I guess there could be facts that would argue for multiple 30-month extensions, depending on the unique circumstances. Now, based on your present argument, then, if a patent is not listed in the orange book and it's still technically infringed under your argument, would a 30-month extension apply to those patents? If a patent is not listed in the orange book and it's technically infringed, and then the patentee comes in and basically sues for infringement in that situation. Well, in this case, Your Honor, what happened was when the paragraph 4 letter was received in this case, Abraxas added patents to the orange book. And in fact, the concern expressed in Teva versus Novartis was that you could game the system, that it would be wrong to let Novartis just dole out its patents and sue on one patent and wait back. I remember exactly what language was in the opinion. Yes. Right, I mean, that's exactly right. That's not what happened here. Here, upon the receipt of the paragraph 4 letter, Abraxas, and that wasn't even Abraxas, it was his predecessor, AstraZeneca, because Abraxas didn't own these patents from inception, and AstraZeneca did. AstraZeneca made filings and added the patents to the orange book. So there wasn't any gaming of the system in this situation. And here, there was a 30-month stay that applied to all of the patents. So there wasn't an attempt to extend the 30-month stay. The other point, I guess, is that what triggers the 30-month stay is a paragraph 4 filing. And if a patent's late listed, a patentee is really depriving themselves of getting the 30-month stay if they late list it and, in the end, it has already been filed, as in this case. So this was not a situation where there was any great advantage obtained by Abraxas by having the patents late listed, in fact. And really, no prejudice to Navinta. I should also mention, just following up Teva, that the Glaxo case, again, as the court knows, addressed this issue where there wasn't a paragraph 4 filing and found that the act of filing an ANDA created what was the act of infringement that gave rise to jurisdiction. So I think the Federal Circuit has addressed, in several cases, that it's the filing of the ANDA that creates jurisdiction. It's not a paragraph 4 filing, as indicated by Navinta and argued by Navinta. Well, then, in that case, it wouldn't matter. I know you cited the regulation about the obligation to bring to the FDA's attention any patents that, well, believes that an applicant has failed to submit required patent information. Yes. And is that a thing that that was relevant or that there was such an obligation? But from what you say, it wouldn't have mattered whether that obligation existed and were met or not in this case. The reason we raised that, Your Honor, was there were arguments by Navinta that tended to suggest that these were hidden patents and there was prejudice that was caused to Navinta. And we felt that, to respond to that argument, we needed to point out first that Navinta knew about these patents since 2004. That was proven at trial. So there was no surprise about these patents. And they chose to proceed with their ANDA even in the face of knowing about these two patents, the two weak patents that were not listed. But also, if they had wanted, if they felt they were being prejudiced by the absence, the non-listing in the orange book of these patents, then they had the ability to bring those patents to the attention of the FDA and force, under the regulations, to take the action that the regulations cited in our brief contract. But the FDA has no obligation to list them. The FDA has a procedure where they would contact the patentee, the patent holder. And they would have to ask the patent holder to list them. And it's not clear that they have authority to force it. But in a case where the patent holder wouldn't be aware of it or whatever, it would obviously bring the issue to light. Here, Navinta, despite claiming prejudice, took no action. And it seemed to be on the record. Mr. Zoboto, let me ask you a question worth reasoning. If the court determines that there was no jurisdiction and no standing to bring the action, and it's dismissed on that basis, and the action is subsequently refiled on the two outstanding patents, which are now in the orange book, would you be entitled to another 30-month extension at that point? Well, the 30-month stay derives, obviously, I think it relates to particular companies, right? So it would depend. It would have to be analyzed in terms of particular companies. And at this point, in terms of the 30-month stay, as to Navinta, there has been a 30-month stay granted as to Navinta. And other companies that would file. Based on the original amendment. Right. But the 30-month stay is triggered by the filing of a suit within 45 days of the paragraph 4 certification, correct? Right. So that would not be met in this case if you had to file a subsequent suit. I guess that, yeah. In other words, if this suit were held to be a nullity, and a new paragraph 4 notice was listed, in that particular circumstance, then the 30-month stay provision could be applicable. If Navinta, as it has with the two patents that are at issue that we're talking about, were to file a section 8, then a different procedure would apply. But it would raise an interesting question about whether even a further paragraph 4 certification would be necessary. Would be necessary, exactly. Which I suppose would depend on how the ANDA is construed. Right. In other words, it would depend somewhat, I guess, in terms of the ANDA as well. If there was a new ANDA or an amended ANDA from the original. Well, we appreciate that this is speculation and not resolution of some of these complex questions. It's a unique case, obviously, and it depends on a number of sort of odd factual twists. And I think it comes to the court with kind of that unique basis. I think we're running well over. Is there anything that you have to tell us in response to the argument in chief? Yes, just one final point, Your Honor. There was a finding at paragraph 250 that Navinta knew or should have known that its acts will result in infringement. And taken in the context of the overall decision, we felt that was a fairly clear finding of meeting the standard for specific intent, obviously, as defined in cases of the SCB case makes it very clear recently that the newer should have known standard would induce actual infringements. And so we feel that the court made a direct finding of inducement as needed in paragraph 250. You're saying that that's the intent requirement? Yes, and the newer should have known as for specific intent. Thank you. Just to be clear, so you're relying on the new or should have known conclusion to support the inducement theory? We believe that the newer should have known is the applicable standard. OK, thank you, Mr. DiBona. Ms. Addy, you have more time as well. We're running over, but for rebuttal argument. Thank you, Your Honors. First, on the 271E2 issue, the language of 271E2 is parallel with the paragraph 4 notice requirement. And in addition, the legislative history is clear. And I quote, the committee expects that infringement actions pursuant to this section will only be brought in the instance described in 271E2, where a party submitting an abbreviated new drug application under Title I of this bill certifies that the patent is invalid or not infringed and gives the required notice of certification to the patent owner. But it is curious that section 5, 271E5, specifically identifies the paragraph 4 certification, and 271E2 does not. It is, and section 5 is the section that was added to give generic filers the parallel right to bring an action as a DJ action when the brand doesn't sue on all of the P4 certifications, and it's supposed to be the mirror image of the brand's right to sue. Understanding. That depends on the filing of the certification in the part 4. That's right. And only under part 4. That's right. That's right, Your Honor. Understanding, if there are no more questions on E2. Understanding, Your Honors, there are no issues of fact here, and the Swedish affiliates are not parties to the APA. The district court admits that the Swedish affiliates are not parties, or are not bound to the APA. Well, it's hard to tell whether there are no issues of fact. These are questions of contract interpretation, contractual intent, as between parties who are completely of one mind as to what they intended to do and to accomplish. And there were findings by the trial judge with respect to what these contracts intended. And so when you say there are no issues of fact, it would be necessary that we then determine either that the district court's findings were clearly erroneous, or that these were questions of law, and no deference is warranted to the trial court. And I assume that that's your position, that there's no deference to any findings as to contractual intent? That's correct, Your Honor. And it's interpreted pursuant to the agreements under New York law, which we go through in our brief. New York law is quite clear that the intent of the contracting parties is a factor to be considered. And we believe that the intent is clearly set forth in the assignments. And in looking at the assignments, it's clear that the Swedish entities are not parties and are not bound by the APA. In addition, Abraxas raised the issue of equitable title. And equitable rights cannot be conferred when you don't own the rights in the first place. So because they did not own the rights in June of 06, they cannot confer equitable title in March of 07. And title was not transferred until November of 07. If you have no more questions. Any more questions? No. No questions? OK. No, then to ask this court to vacate the decision and the injunction below for lack of standing or lack of jurisdiction on 271E. Thank you, Your Honors. Thank you, Ms. Addy. Mr. DeBoto, the case is taken under submission.